[Criminal No. 919. Filed January 12, 1942.]

[120 Pac. (2d) 808.]

THE STATE OF ARIZONA, Plaintiff, v. E. V. DAVIS and NAOMI DAVIS, Defendants.

Mr. Richard F. Harless, County Attorney, and Mr. Harold R. Scoville, Deputy County Attorney, for Plaintiff.

Mr. Charlie W. Clark, for Defendants.

LOCKWOOD, C. J.—E. V. Davis and Naomi Davis, his wife, defendants, were charged by an information filed in the superior court with the crime of contributing to the delinquency of minors. The information, so far as material for the purposes of this case, reads as follows:

"The said E. V. Davis and Naomi Davis . . . did did then and there, by their wrongful and improper acts and conduct, wilfully and unlawfully encourage and contribute to the delinquency of Thelma Davis and Wayne Davis, who were then and there children under the age of eighteen years, to-wit: of the age of eleven years and nine years respectively, which said wrongful and improper acts on the part of the defendants were as follows, to-wit:

"That the said defendants being then and there adult persons and being the natural parents of the said children, and being members of a religious sect known as Jehovah's Witnesses, . . . they, the said defendants did then and there teach, instruct, direct and command the said Thelma Davis and Wayne Davis not to and to refuse to pledge allegiance to and salute the flag of the United States of America at all times and while they, the said Thelma Davis and Wayne Davis were attending the public schools of the State

of Arizona, for the reason that to salute the flag of the United States of America was contrary to the religious belief of the said sect known as Jehovah's Witnesses and the religious beliefs of them, the said defendants and of the said Thelma Davis and Wayne Davis; and they the said defendants then and there well knowing that under and by virtue of the laws of the State of Arizona, . . . the said Thelma Davis and the said Wayne Davis and all other pupils attending school therein were required to salute the said flag of the United States of America; and the said defendants then and there well knowing that by the refusal of the said Thelma Davis and the said Wayne Davis to salute the flag of the United States of America they, the said Thelma Davis and Wayne Davis would thereupon be lawfully barred and expelled from attendance in the said public school provided for the education of the said children, . . . and . . . that the said Thelma Davis and the said Wayne Davis could not in fact in any other manner obtain educational instruction, either at public or private schools as provided by the laws of the State of Arizona.

"That the said minor children acted in obedience to the said instruction of the said defendants to refuse to salute the said flag of the United States, and that the said minor children were on that account and therefor barred and expelled from attendance in the said public schools, and that said minor children cannot otherwise obtain educational instruction as provided by the laws of the State of Arizona; . . . "

Defendants moved to quash the information on the ground that it did not charge them with a public offense, and the trial court being of the opinion that the question raised was so doubtful and important as to require the decision of this court before further proceedings were had, certified to us the following question: "Does the amended information on file herein state a public offense under Section 43–1008, Arizona Code Annotated, 1939, or under any other law in force in the State of Arizona?"

Section 43–1008, Arizona Code 1939, which defendants are charged with violating, reads so far as material as follows:

*"Contributing to delinquency and dependency—Penalty—Procedure.*—Any person who shall by any act, cause, encourage or contribute to the dependency or delinquency of a child, as these terms with reference to children are defined by the preceding section, or who shall for any cause be responsible therefor, shall be guilty of a misdemeanor, and upon trial and conviction thereof, shall be punished by a fine not to exceed three hundred and fifty dollars ($350) or by imprisonment in the county jail for a period not exceeding one (1) year, or by both such fine and imprisonment. . . . "

Section 43–1007, Arizona Code 1939, defines a dependent person as follows:

"(a)   The words 'dependent person' shall mean any person under the age of eighteen (18) years; . . .

"17.   Who from any cause is in danger of growing up to lead an idle, dissolute or immoral life. . . .

"(c)   The term 'delinquency' shall mean any act which tends to debase or injure the morals, health or welfare of a child."

It is contended by the state that the conduct with which defendants are charged tends to debase and injure the morals, health and welfare of the minor children described in the information.   If this be true, then upon its face the information does charge a public offense.

Defendants do not question the constitutionality of this statute, or that ordinarily speaking any act which violates it constitutes a misdemeanor, but contend that their conduct does not fall within the prohibition of the statute for the reason that it is their sincere religious belief that to salute the flag of the United States, as required by the school laws and regulations, is an act of idolatry which is forbidden by the

second commandment of the Decalogue, which reads, so far as material, as follows:

"4. Thou shalt not make unto thee any graven image, or any likeness of any thing that is in heaven above, or that is in the earth beneath, or that is in the water under the earth:

"5. Thou shalt not bow down thyself to them, nor serve them: . . . "

They claim that by virtue of the First Amendment to the Federal Constitution they are at liberty not only to believe this, but freely to teach their belief to their children, and that if it be their constitutional right so to teach, they cannot be punished for such an act.

When questions arise under the Federal Constitution, the decisions of the Supreme Court of the United States are absolutely binding upon us, and regardless of what we may think in regard to the reason or logic used by that court, we must bow in obedience to its judgments.

The thing which defendants were charged with doing is that they did "teach, instruct, direct and command" the children to refuse to salute the American flag in the public schools, because it is the sincere religious conviction of defendants that they would violate the command of God in so doing. Unquestionably this belief of defendants is an exercise of religion as protected by the First Amendment, and ordinarily speaking it is held that the Amendment guarantees not only the right of belief, but includes that of peacefully teaching such belief to others.

In the case of *Minersville School District* v. *Gobitis,* 310 U. S. 586, 60 Sup. Ct. 1010, 1015, 84 L. Ed. 1375, 1381, 1382, 127 A. L. R. 1493, the Supreme Court of the United States had before it the following situation: Two minor children were expelled from the

public school of Minersville, Pa., for refusing to salute the national flag, as required by the local board of education. The Gobitis family, like the defendants herein, were affiliated with that religious sect known as Jehovah's Witnesses, and conscientiously believed that saluting the flag was forbidden by the Scripture. The children involved in that case, as in this, had been reared by their parents in this belief, and for this reason refused to salute the flag. Those children, as these, were of an age for which the law made school attendance compulsory but were thus denied a free education in the public schools.

In the Gobitis case the father brought suit, on his own behalf and that of the children, to compel the school authorities to allow his children to continue in attendance at the public schools without complying with the regulation requiring a salute of the flag. The opinion of the court was delivered by Mr. Justice FRANKFURTER. Therein the court discussed at length the general principles governing the First Amendment and their application to the states by reason of the Fourteenth Amendment, and pointed out that the case raised the question of a conflict between the rights of society and those of parents in regard to the education of children. The question as to whether the parents violated any law by teaching the children their peculiar religious belief was not directly before the court, but it stated its conclusions in the following language:

"What the school authorities are really asserting is the right to awaken in the child's mind considerations as to the significance of the flag contrary to those implanted by the parent. In such an attempt the state is normally at a disadvantage in competing with the parent's authority, *so long—and this is the vital aspect of religious toleration—as parents are unmolested in their right to counteract by their own*

*persuasiveness the wisdom and rightness of those loy-
alties which the state's educational system is seeking
to promote. . . .*

" . . . A society which is dedicated to the preserva-
tion of these ultimate values of civilization may in self-
protection utilize the educational process for incul-
cating those almost unconscious feelings which bind
men together in a comprehending loyalty, whatever
may be their lesser differences and difficulties. That
is to say, the process may be utilized *so long as men's
right to believe as they please, to win others to their
way of belief,* and their right to assemble in their
chosen places of worship for the devotional ceremo-
nies of their faith, *are all fully respected.*" (Italics
ours.)

■■ We cannot consider this language as mean-
ing anything less than that, while the state may in-
sist that in its public schools it may use the educa-
tional process for inculcating respect for the flag in
such manner as it thinks proper and require that all
who attend those schools must obey such rules under
penalty of expulsion, others who think those practices
contradict their religious belief, and particularly the
parents of the children attending the schools, must
have the privilege *by reasoning and persuasion* of at-
tempting to convince the children that the teaching of
the school is a violation of the law of God. This con-
clusion, as we have said, is absolutely binding upon
us. And we think it necessarily follows that defend-
ants cannot be punished for exercising a right guar-
anteed by the Federal Constitution.

■■ It will be noted, however, and this is of vital
importance in the present case, that the court limits
this freedom to *reasoning and persuasion.* It has
been well said that belief cannot be compelled, and
we think the First Amendment does not extend to any
person, whether he be a parent or not, the right un-
der the guise of religious liberty to *compel* others to

conform to conduct in which he believes. But the information in the present case alleges not only that the defendants did "teach and instruct" their children in regard to their conduct, which right is given them by the First Amendment, under the decision in the Gobitis case, but that they did also "direct and command" them to follow this belief of the parents, regardless of their own belief. This, we think, goes far beyond the rights guaranteed under the First Amendment. The vast majority of our people believe, and we think correctly so, that the salute to the flag, which typifies our country and the principles upon which it is founded, is a wise, reasonable and patriotic exercise and that it is in the interest of the welfare of the children of the country that they participate in this simple exercise, and that a failure to follow the almost universal custom in this respect does tend to injure the morals and future welfare of the children in ways too numerous to mention. Any attempt to direct or compel a child to refuse to follow the national custom in this respect in our opinion does contribute to the delinquency of the child, and may properly be made a crime by the state without violating the First Amendment.

The provisions in the information in regard to teaching and instructing may, therefore, be disregarded as surplusage, and it does state a public offense in that it charges defendants did "direct and command" the conduct set forth therein, and upon proof of these essential facts a conviction of contributory delinquency would be justified.

It may be urged that the mere teaching and instructing, with which defendants are charged, will, if followed by the children, prevent them from attending the public schools and obtaining an education, and will, therefore, injure their future welfare.

■ The compulsory school law of Arizona provides that those having charge of a child between the ages of eight and sixteen shall "send such child to a public school," which we understand to mean to send them with instructions to obey all the proper rules and regulations of the school. But it also provides two other methods by which the education required may be obtained. Section 54–505, Arizona Code 1939. If the defendants fail to provide, in one of the manners set forth in said section, the required education for their children, another question would be raised which we can decide when it is properly presented to us.

The question certified to us is, with the qualifications and exceptions set forth in this opinion, answered in the affirmative.

McALISTER, J., concurs.

ROSS, J. (concurring in part).—I concur in the opinion of the majority that the information states a public offense but for entirely different reasons than those assigned by the majority. My colleagues seem to think the state can punish the parents for their religious beliefs if such beliefs are enforced by "directions or commands" but not if inculcated by "teaching or instruction" merely. In other words, they seem to think that this proceeding is one to punish the parents on account of their religion, whereas it has for its purpose their punishment for contributing toward the delinquency of their children, in that they are not affording their children an opportunity for an education equal to the minimum education provided by the common schools of the state. The only defenses to such a charge, as I conceive it, are (1) that their children are attending the public schools or (2) if not, they are attending a private or parochial

school or receiving private tutorage equal to that given in the public schools. If none of these is available to the children, their morals, health and welfare are certain to suffer injury for which no one but the defendants is responsible. The proceeding is not to punish defendants on account of their religious beliefs but for neglect to perform not only a natural but a legal duty to their children by arranging for the minimum of education for them as provided in the public school laws. The majority opinion seems to agree that that is the offense charged. The only way to escape punishment for such offense is to show inability to comply with the law. If the defendants are too poor to pay for the children's instruction in a private or parochial school or to hire a private tutor, and there is no public school available to them, the defendants cannot be punished, for the law will not exact an impossible thing. But if the parents are financially able to take care of their children's education as indicated, or if there is a public school available, there exists no excuse for the neglect of the morals, health and welfare of such children.

Under the Gobitis decision (310 U. S. 586, 60 Sup. Ct. 1010, 84 L. Ed. 1375, 127 A. L. R. 1493), which is the law on the question, the school board had a right to exclude the Gobitis children for refusing to salute the flag. These children were excluded, not because they believed it idolatrous to salute their country's flag but because they refused to conform with the rules and regulations of the school. It would have been the same if they had refused because the flag was old, torn and faded.

In that case the right of the parents to teach or persuade their children to conform to their religious tenets was not involved. The act condemned was that of the children—failure to salute the flag—and the

children's, and not the parents', act was the ground upon which they were excluded from school. In all these exclusion cases, the children have been the sufferers and not the parents. While the excuse made for the children in not saluting the flag is that it was against their religion, such excuse is no more permissible than if the children had refused to salute it through wilfulness or disobedience to the teacher. As I construe the Gobitis decision, it is to the effect that laws like the one requiring a child to salute the flag are legal and enforceable

*"so long as men's right to believe as they please, to win others to their way of belief, and their right to assemble in their chosen places of worship for the devotional ceremonies of their faith, are all fully respected."* (Italics mine.)

Gobitis case, *supra,* 310 U. S. 586, 60 Sup. Ct. at page 1015, 84 L. Ed. at page 1382 and 127 A. L. R. at page 1498.

The enforcement of the law punishing persons who contribute to the dependency or delinquency of their minor children (sections 43–1001 to 43–1011, Arizona Code 1939) will not interfere with any of such enumerated rights. The defendants may teach their children, without let or hindrance, any religious beliefs they choose and, so long as such teaching or its effect does not run counter to a general law enacted under the police power of the state to protect the peace, health and general welfare thereof, they commit no crime and may not be punished therefor. But their situation is like that of the person who claims, under constitutional provisions guaranteeing free speech and a free press, the right to speak and write what he pleases. This may not be denied but under such privilege he is responsible for any wrong or damage occasioned thereby to others. A person's religious

belief may be that it is wrong to have recourse to medicine in case of sickness but such a belief is no defense in a prosecution for manslaughter. It is said, in 26 American Jurisprudence 229, section 108:

" . . . The law of the land must be obeyed even though there is something in the shape of belief in the conscience of the person coming under its obligation which would lead him to obey what, in his state of mind, he may consider a higher power or authority. . . . "

It seems to me that the majority have been misled into a most egregious error from the simple fact that in the information the pleader anticipated the defense the defendants would probably make and alleged it, that is, that the children Thelma Davis and Wayne Davis were taught, instructed, directed and commanded by defendants not to salute the flag. That, if true, is no defense to a charge of contributing towards the delinquency of the children. The information might better have omitted such allegations. They are not necessary elements of the offense; they are surplusage at most. The only question is, have the defendants committed an act of delinquency against these children, and not how they committed it. My answer is yes.